of America, arguments not to exceed 15 minutes per side. Mr. Hammack for the appellant. Mr. Hammack. Good morning, Your Honors. May it please the Court, my name is Joshua Hammack, and I represent the petitioner appellant Deidre Clark. I would like to reserve three minutes for the petitioner to speak. Your Honors, the District Court failed to address Ms. Clark's severe depression and its impact on her ability to file a comprehensive 2255 motion in the first instance. As a result, Ms. Clark's motion to amend was improperly denied. She should be permitted to amend her 2255 motion either by this Court or by the District Court on remand with an evidentiary hearing as appropriate. At bottom, Your Honors, this case concerns a straightforward and largely undisputed issue, namely whether severe depression may constitute a compelling reason to permit amendment after a magistrate judge has issued a report and recommendation. Did your client file any kind of an affidavit by some kind of a health person to show that she was suffering from depression when she made this allegation? Unfortunately, no, Your Honors. She did not submit an affidavit from a health professional. She did not at that time have her medical records. She has since obtained them. She didn't file her second motion to amend either, did she? That's correct, Your Honor. She did not file a medical record or a statement from a medical professional regarding her diagnosis. She has since received her medical records and would be able to submit documentation of her diagnosis and treatment during the relevant period on remand. But taking a step back, Your Honors, it's important to first address depression's symptoms, which largely, again, are undisputed here. It can cause difficulty thinking, concentrating, remembering details, and making decisions. It can also significantly interfere with a person's thoughts and activities, particularly with that individual's ability to work and study. And in light of these symptoms, it follows naturally that depression may sometimes count as a compelling reason. If the illness impacts the petitioner's ability to think, remember, study, and decide, it may also impact her ability to file a comprehensive 2255 motion. Did she become represented only in this court? Yes, Your Honor. She got representation only on this appeal. And, moreover, Your Honors, the idea that mental illnesses may justify departures from normal timing requirements is not new to this court. As we pointed out in the briefs, this court has noted that mental illnesses may justify equitable tolling of statutes of limitations. It should similarly recognize today that severe depression may count as a compelling reason to permit amendment. And in its briefing, the government accepts that depression may sometimes be a compelling reason to permit amendment. It proceeds, however, to quibble about whether Ms. Clark has made the requisite showings in this case. The important point here, though, is that because it misread this court's decision in Murr, the district court altogether failed to evaluate Ms. Clark's depression as a potentially compelling reason to permit amendment. It never even considered whether Ms. Clark satisfied the standard. At the very least, it should be directed to do so on remand. And, more to the point, as discussed in our briefs, Ms. Clark satisfies the standard here. Once again, the parties agree about the applicable framework. To demonstrate that her mental illness is a compelling reason to permit amendment, Ms. Clark must first make a threshold showing of severe depression. And second, she must demonstrate a causal link between her depression and her inability to file a comprehensive motion in the first instance. With respect to that threshold showing, she stated in both motions that she suffered from severe depression. And consistent with a previous diagnosis, this depression closely followed separation from close family members. In 2000, she was diagnosed with depression after her father and grandmother died. Here, she suffered from depression after an extended period of separation and isolation from her daughters as a result of her incarceration. Where was she when she filed all these? Was she out or was she in a prison? She was a prisoner when she filed them. You mean the motion to amend, Your Honor? Yeah, well, the whole thing. When she filed her initial petition, she was incarcerated in, I believe it was Minnesota or Wisconsin. And what about at the time of her first motion to amend? She had been transferred to a facility in Brewston Mills, West Virginia, which is significantly closer to her daughters who were in Kentucky at the time. And what about at the time of her second motion to amend? I believe she was still in that facility in West Virginia. She had already, the time to take any appeal from the denial of her original 2255 and her first motion to amend had already expired before she filed the second motion to amend. That is not correct, Your Honor. She filed her second motion to amend within the time that she could have appealed the denial and the initial motion to amend. But by the time she actually filed a notice of appeal, it was untimely as to those first things. So she filed within the relevant window. No, the second motion to amend came at a point when she could have appealed, but she didn't take that avenue. And then before the second motion to amend was acted upon, her time had expired. Is that right? That's not quite right, Your Honor. Your first point was correct. She could have appealed at the time she filed her second motion to amend, but the court denied that motion only one day later. So she still could have filed a timely notice of appeal as to the initial denial of her habeas petition and the denial of her first motion to amend. But she didn't file her notice of appeal until, I believe, October 31st, eight days after she would have been able to file a notice of appeal that was timely as to those first two issues, the initial 2255 motion and the first motion to amend. Why is this not a second or successive issue here? Well, again, Your Honors, first she labeled it a motion to amend. And the important point here is that the district court acted on her motion to amend as such. And it wasn't a second or successive motion because there was no proceeding that counted as the first. And we point, Your Honors, to the Second Circuit's decision in Ching where the court said that the paradigmatic case is when a petitioner files a motion, loses on the merits, and either that appellate window has closed, the time has expired, or she's exhausted appellate remedies and then files a second motion. But your argument is not really limited in a time way. So your argument would basically be, as I understand it, that if you file a motion to amend, whether it's your second, your third, or your fourth, and it's identical to both your initial petition or your first motion to amend, you can file it and attach it to the additional proceeding without its being labeled. You know, call it the same thing, put the same docket number on it, make the same arguments you've made before, and you can make them over and over again, and nobody's ever going to call that a second or successive petition. Well, I don't think there's any need to call it a second or successive petition to protect against the kind of abuses Your Honor is discussing here. The issue, I mean, suppose we're governed by Rule 15 instead. The mechanism is already established. It makes a big analytical difference here because whatever the propriety would be of considering depression in connection with, if you're considering this all a part of one proceeding, if it's a second or successive petition, then we're probably not going to be inquiring into whether she was depressed or not, are we? I think that's probably correct, Your Honor. Right, because, I mean, it wouldn't be permissible. That's correct, Your Honor. So it makes a huge analytical, makes a big difference analytically. Correct, Your Honor. My point was just that there's no reason for the court to go out of its way to call it a second or successive motion to prevent the kind of abuses you were discussing. Rule 15 already has a mechanism to prevent those abuses with bad faith tactics or undue delay. The court can already deny a proposed motion to amend that is simply repetitive or is the fourth or fifth identical motion to amend that Your Honor discussed. And here it's also important to remember that the way the district court handled that first motion to amend was justifiably confusing to a pro se petitioner. So in his, well, let's take one step back further. She filed her first motion to amend, and one day later the district court filed his memorandum opinion and order incorporating the magistrate judge's report and recommendation and dismissing Ms. Clark's habeas petition altogether. He dealt with that motion to amend in the same opinion and order, in the same proceedings. And initially he described it as a motion to amend, but later said that he had construed that motion to amend actually as objections to the magistrate judge's order. And it's our position, Your Honor, that that treatment makes no sense because she was attempting to bring entirely new claims that were not raised before the magistrate judge. So treating them as objections just doesn't make any sense. So that second motion was essentially a motion for the court to treat the motion to amend as a motion to amend and rule on it on the merits pursuant to a Rule 15 analysis and whether she had put forth compelling reasons. What's the best case you have that Rule 15 applies to 2255? That Rule 15 applies to 2255 generally? I think this court has established that in several cases. I think the Olson is certainly an unpublished decision but highly persuasive on this point, that the general guidelines of Rule 15 apply in the habeas context. Well, Olson says, quote, it does not appear we have ever allowed the amendment to a 2255 motion after the 2255 is denied. That's correct, but it left open that door. So it is true that today the court will have to decide whether a post-judgment amendment is permitted in the 2255 context under Rule 15 or presumably otherwise. But Olson left open that door. It didn't make a decision because it would have been dicta because the court rested on other grounds. If I understand the underlying charge here, she pled guilty to possessing an unregistered sawed-off shotgun, right? That is count 20. And she also made a false statement to a licensed firearms dealer. No low contendery to that. Correct, Your Honor. She was a straw purchaser. Sounds like this is sort of an open-and-shut factual issue. Why would depression play a big part in whether she did or didn't possess the sawed-off shotgun? Well, depression doesn't play a part in whether she is guilty of those offenses necessarily. Depression plays a part in whether she was justified, I suppose, or had a compelling reason not to present the claims that she presented in her motion to amend at an earlier date, namely when she filed her initial petition. You know, I know your times of it. If we were to treat this as we would amendments in a normal civil case, you know, we'd be talking about things in addition to whether there was a justification for delay. I mean, we'd be talking about things like whether futility and whether there was any claim she sought to make that she might have succeeded on or whether there was any reason for the district court to have granted either of her motions to amend. And, you know, I guess because of the limits with the... Well, what do you say to that? I mean, why aren't we talking about something else? Your Honors, essentially it's not the proper time to talk about futility here. The district court kind of jumped the gun with respect to futility, quite frankly. It ruled on her motion the day after it was filed without giving the opportunity, without giving even the government an opportunity to oppose that motion or file, for example, a motion to dismiss and raise, tee up these futility issues and then permit Ms. Clark essentially to address them on her own, to provide further support for the bases of her claims, further factual allegations that the court could consider in determining futility. Because the court ruled when it did, this court just doesn't have the briefing. It doesn't have the issues teed up properly for a decision. And at this time, I think the more prudent course for the court is to remand and allow the district court to consider the futility issues as well as any other general Rule 15 analysis, bad faith, undue delay, et cetera, in the first instance on remand. And with that, Your Honor, I thank you very much. All right. Mr. Fyfe, is that correct? Yes, Your Honor. Please, the court, good morning. My name is Brandon Fyfe. I'm here on behalf of the United States. This case boils down to a really simple issue, and it's just that Ms. Clark has not made sufficient assertions on the record to support her claims of depression and to rise to that compelling reason to allow amendment. There are only three references anywhere in the record to Ms. Clark's alleged depression, and all three of those hinge entirely on assertions made by Ms. Clark. There's a reference in the initial motion to amend. There's a cover letter for the second motion to amend, and then there's a reference in the pre-sentence report that Ms. Clark told a probation officer that she was once treated for depression. But those are really the only allegations that Ms. Clark has made. There's nothing else in the record to support that. There's no affidavit tying her alleged illness to her inability to file a comprehensive petition. There's no medical documentation from any medical examiners, any psychologists, psychiatrists with the Bureau of Prisons. These are just her assertions. Her counsel says that she's got it now. She couldn't get it in time to put in with her 2255. What do you say about that or any motion to amend and so forth? Do you know about it? Have you seen it? No, Your Honor. It's not in the record. I haven't seen that. My thought would be in order to justify this motion to amend when the motion to amend was filed, she would have needed to, I mean, even I think an affidavit from Ms. Clark tying her alleged symptoms to her inability to file would have at least done something in her favor. But that's not here. There's nothing there. I mean, it's a scarcity on that front. And I think the issue with this is because there have been nothing more than just bare assertions to allow a post-report and recommendation amendment here would really open the floodgates to any sort of, any pro se litigant who had an unfavorable judgment or an unfavorable report and recommendation from a magistrate judge to come back and amend just based solely on these bare assertions. Do you have a case that says that the Rule 15 doesn't apply to 2255? They've got one that's unpublished. Do you have one of any sort? No, Your Honor. I think the Olson case is instructive, though. And opposing counsel did mention that in that case the court recognized that this court has never, never in its history allowed a post-judgment amendment on a 2255 petition. And in this instance, I don't think this is the appropriate instance to start allowing that. You do cite some authority for the proposition that Rule 15 doesn't apply to a decision on the merits, right? Yes. Both in the 2255 context and outside it. Yes, that's correct. In this particular instance, the 15A2 isn't really a good fit. I mean, 15A2 is contemplating, I think, an amendment before judgment. I mean, it's there within the text of the Rule. And so in this particular instance, it shouldn't apply. That's something, I mean, even if it were to apply, the motion to amend should still be denied on futility grounds, as Judge Gibbons mentioned earlier. You know, but nobody seems to make futility arguments, really. Well, Your Honor, I mean, I think the court did consider those futility arguments in its response. I mean, the court has addressed a lot of these issues. And as far as the additional claims that were attempted to be added in the motion to amend, there was a claim of selective prosecution, which fails as a matter of law. Mrs. Clark was alleging that members of her criminal cohort received sentences that weren't commensurate with what she received. And that's not what a selective prosecution claim is. Additionally, the judicial bias claim that she attempts to make is based entirely upon statements made by the sentencing judge at sentencing. And that transcript is in the record as well. I mean, the entire basis for those additional claims is in the record. And those, I think, are very clearly her new claims would fail. And they would be futile, and such an amendment wouldn't be necessary. Is one of the things she's claiming selective prosecution because somebody else wasn't? Yes, I mean, that's the issue. She's not alleging kind of the archetypal example of discrimination on the basis of a protected class or anything like that. All she's alleging is that there were some folks that were involved with the criminal enterprise that either weren't prosecuted or didn't receive sentences close to what she has. It sounds like more a sentencing disparity claim than a selective prosecution claim. Yes, yes. But I think it's framed in the motion to amend as a selective prosecution. She may call it a selective prosecution claim. That doesn't mean that's what it in fact is. True, true. But in this particular instance, I mean, just to go back to the issue, I mean, there's nothing in the record that would support this motion to amend. And while those medical records may be available now, they're not in the record. And, I mean, because of that lack of information, I just don't think that there's any way that there could be an allowance in a motion to amend without opening the floodgates for other litigants to amend. Do you have any authority that supports your argument about that? Well, I mean, I think that question about, if I understand your question correctly, you're asking about? For a document, you know, that there has to be some documentation, not just bare allegations. Yes, yes, Your Honor. Granted, Ms. Clark, when she was filing these petitions, was a pro se litigant. But Martin B. Overton is a case that states that the kind of lenity that should be given to a pro se litigant is not boundless. Additionally, there are examples in the Sixth Circuit cases regarding equitable tolling for statute of limitations, McSwain, Adda, those cases. There are, in those cases, there were ways for the individuals to show what it was that they, what it was that was preventing them from filing their petitions timely. Similarly, that could be applied to this case. And under that analysis, there's just nothing there. Is there some requirement that the cause has to be something external to the defendant? Or is that for Rule 59 purposes, maybe? I'm not aware of any requirement that it necessarily be something external to the defendant. But, for example, in McSwain, Adda, NARA, those cases, that kind of line of cases, all of the individuals in those cases that were asking for equitable tolling were able to demonstrate that they had suffered some sort of incompetence due to their mental disability. But even in those cases, the court was, even if they were able to establish that they were incompetent somehow, that they were suffering from some sort of mental duress, mental incompetence while they were filing, they still had to tie that incompetence to their inability to file a comprehensive petition. So they had to demonstrate both incompetence and a kind of causation that that incompetence somehow limited their ability to file. And in this case, Mrs. Clark has not even demonstrated incompetence, at least based on the record. And if she hasn't demonstrated competence, it would be very difficult, I think, for her to demonstrate any sort of causation on that front. How should we treat this case, should we say, as a second successive petition? Or should we say that it's too late to amend once the judgment came down? Or is there some other way that you would have us rule? I think it is too late to amend after the judgment came down. I mean, I think it's arguably a second successive 2255 petition, and as such it would be too late to amend. Well, now, wait a minute. Is it too late to amend, is that one argument? Or is the only argument you have that it's too late to amend the argument that it's a second or successive petition? I understood your brief. I mean, to be arguing really two separate things, and, you know, the characterizing it as a second or successive petition might be a reason for disallowing it, but also the untimeliness of the amendment itself might be another basis. Is that right? That's correct, Your Honor. I mean, I think this arguably – Well, that's – I don't think that – maybe that's not – maybe that's what you said to Judge Seiler, but I didn't understand it to be exactly what you said to Judge Seiler. I apologize for any confusion. I mean, I think this could be treated as a successive 2255, and under that it would be too late to allow any sort of amendment in this circumstance. Well, but if it were a second or successive petition, the reason it wouldn't be allowed would be because of its content, not because of its lateness. Yes, that's correct. But just on a timeliness ground, as far as trying to use Rule 15a2 to amend kind of untimely after that judgment has come down, I mean, I think Ms. Clark's failure to demonstrate that incompetence, failure to tie that incompetence to her inability to file, is sufficient grounds to deny this appeal. Additionally, Your Honor, there's also kind of the issue of an evidentiary hearing. I know one of the things that Ms. Clark seeks is for this to possibly be remanded and then there be an evidentiary hearing. In order to justify that evidentiary hearing, there would need to be some allegations that would be sufficiently specific to – under ADDA there would have to be some allegations that were sufficiently specific to justify an evidentiary hearing. And again, the allegations here are just bare assertions by Ms. Clark. She hasn't met that sufficient specificity that's required under ADDA. Likewise, those allegations would need to be consistent with the record. And in this instance, the record is inconsistent on this. While there were only three different references by Ms. Clark to her mental illness at this point, there were also instances in the record, for example, Ms. Clark at rearrangement told the sentencing judge that she had never, ever been treated for any sort of mental health issues, which is inconsistent with what she had told a probation officer during the preparation of the pre-sentence report. So the record is inconsistent on this matter and certainly does not support an evidentiary hearing. Your Honors, for the reasons previously discussed, I believe the decision of the district court was correct. And if Your Honors have no further questions, I'll rest on the briefs. Mr. Hammack. Thank you, Your Honors. I just have a few points to make. First is the distinction that the government is trying to make between demonstrating and providing an allegation and proving. So essentially, the argument, as it's currently framed, is that Ms. Clark didn't offer any evidence and therefore her claim must fail, her motion to amend must fail. That's simply untrue. And as we've argued in our brief, her allegations may merit further evidentiary development. There may be a reason here for an evidentiary hearing, and we argue there is a reason here for an evidentiary hearing. Namely, her allegations are sufficiently specific. First, she alleged very clearly that she suffered from severe depression, and she did tie that depression to her inability to file a comprehensive motion in the first instance. She said in each motion to amend that her non-comprehensive, inconclusive initial 2255 action was, quote, due to her severe depression, unquote. In other words, it was because of that depression that she was unable to file these claims in a timely manner. And then in a cover letter to the second motion, she further explained that she was, quote, not in her right state of mind to have properly submitted them, unquote. Again, tying that severe depression to her inability to file in the first instance. And nothing in the record is inconsistent with those claims. She did suffer a previous instance of depression after separation from close family members. That's a consistent trigger here. And with respect to an evidentiary hearing, I mean, that's all you need. All you need is sufficient specificity, and nothing in the record refutes the allegations. Do you have to have more than just bare allegations? Do you have to have at least an affidavit or medical something or other to back up what you're alleging? Nothing suggests that in this court's case. Assuming you might not have to have evidence, I've just looked at both her original motion to amend and her second motion to amend, and admittedly I'm looking at them very quickly, and I might be missing something that a more thorough reading might. But they both allude just very generally to her severe depression, and she says all the arguments were not presented initially. And then she proceeds. That's just about it, I mean, you know. And then she proceeds to, I mean, the first motion to amend is a multi-paged, very, very detailed filing, which doesn't really, I mean, seems not to be the work of someone who's unable to pursue things in court. And her second motion to amend parrots, you know, that same language. And there's just nothing about time frame. There's nothing descriptive. There's nothing that indicates she sought medical treatment. So even if you say, well, it doesn't have to be evidence, there's hardly anything on the face of the pleadings that would say that would provide a basis for taking a second look at what the district court did, does it seem? I disagree, Your Honor. I think it's important to remember here that she was a pro se petitioner. She had no reason to know that she needed to provide detailed medical records or that the court would disbelieve her diagnosis and treatment for severe depression. And it's also important to remember. Well, it doesn't appear that it's anything other than a self-characterization from the motions. Even if that were true, Your Honor, the allegations are sufficiently specific to warrant evidentiary development. So the question then becomes, can she actually support these allegations, which, you know, the government has called self-serving allegations, but can she actually substantiate those allegations with evidence? Can she put forth medical records and expert testimony and an affidavit and perhaps her own testimony to substantiate the claims she's made? And that's a different question than whether they are sufficiently specific. So I see I'm out of time, Your Honors. Thank you very much. If there's nothing else, we appreciate the argument both of you have given. We'll consider the case carefully. In your case, Mr. Hammack, we know you've been appointed under the Criminal Justice Act, and we're very appreciative of your having accepted the appointment and your representation of Ms. Clark and your advocacy on her behalf. Thank you both. And I believe that concludes the argued docket for today. And so you may adjourn court. This honorable court is now adjourned.